is DACA 2560-28, counsel please proceed when you're ready. Thank you, your honors. May it please the court, my name is Lynn Hartfield and I represent the appellant Michael Dias. Now the first two issues that I've raised require the court to take a hard look at the strength of the evidence in this case, albeit under slightly different standards. With regard to the 404B issue, the government doesn't really contest that it was error to admit that conviction. It was not relevant to either intent or knowledge and I would draw the court's attention to the Third Circuit's opinion in Caldwell that thoroughly sets out why a felon in possession conviction is not relevant in a case like this. Now the court, the district court also didn't conduct a Rule 403 balancing as required by Losgado v. Lobos which compounded the error. However, the government's real argument focuses on the harmless error analysis and that standard requires the court to look at whether the error substantially influenced the outcome of the case, which in turn requires an assessment of the strength of the evidence and the probative value of erroneously admitted evidence. So here, looking at the strength of the evidence, the alleged victim Austin testified that he came home to pick up a piece of clothing and he found Mr. Dias in his home. Austin and Mr. Dias then had a verbal altercation which was captured on video and then Mr. Dias left the home and Mr. Austin chased him out of the home and at that point the video stops. If we only had Mr. Austin's testimony, there wouldn't be a lot to say here, but we don't. What we have is a video of the altercation before Mr. Dias allegedly pulled out a gun. We have a 9-1-1 call and we have a body cam video from the responding officer. Now there are six different things that undermine Mr. Austin's testimony and I just want to draw the court's attention to those things. The first is the demeanor of the two parties on the cell phone video. What we can see is that Mr. Austin is enraged, understandable since he found someone in his home, but nonetheless he was extremely enraged. He threatened to kill Mr. Dias several times. He's extremely angry. Mr. Dias, on the other hand, is fairly calm and he's just trying to de-escalate the situation. So again, when you just look at the demeanor of the two parties and you had to guess which person pulled the gun, it certainly would seem... Well, the cell phone video was played for the jury, right? Yes. Why isn't this a credibility determination for the jury? Again... You're talking about demeanor. I mean that is right in the purview of what a jury does. Well, it is true that the jury makes credibility determinations, but this court still has to look at whether the evidence was sufficient under a beyond a reasonable doubt standard. And the Goldsberry decision is the case that I think the court should look at the most closely because in that case we also had different witnesses testifying. Some testified one thing... We had two. We had actually one. Anyway, I don't think this case is close at all to Goldsberry. There was not a video of what happened in the bedroom in Goldsberry. And nor was there a video of what happened regarding the gun. We have a video of what happened before the gun was pulled, but we certainly don't have a video of what happened at the time the gun was pulled. And similar to Goldsberry, we didn't have the defendant testify, but we had other people talking about what the defendant said in Goldsberry. And here we have the defendant captured on video saying, I didn't break into your house. Let me get out of here. Let me pick up my belongings. I will leave. Couldn't a jury look at that just the opposite of what you are? Which is to say a firearm can be used for defense as well as offense, and certainly the homeowner was very aggressive and continued to pursue and there were threats and as you said understandably, very upset about that. And as I look at that video, right before it breaks off, it looks like the defendant is trying to reach inside of the yellow toolkit, trying to reach inside, and then it breaks off. Why wouldn't it be a reasonable inference that indeed he got the firearm out of the toolkit and the homeowner ran away? Well, certainly I think that the evidence, you know, Mr. Dyes did not have the burden of proof here. And what I am saying is that the evidence was about 50-50. We have, you know, the Mr. Austin's testimony and then we have all of the things that cast doubt on it. And it's not just the demeanor. The fact that he says I wasn't the one shooting doesn't seem that odd to me given, I mean, we're talking about a black man who's facing with the police. I mean, we have plenty of cases where you you want to make very clear I'm not the shooter here. And that's certainly... And the jury could, I mean, the problem that I have with your argument is that all of this seems to be asking us to put ourselves in the role of the jury here. And, you know, I don't, you know, that's not what we do. Well, that's that's certainly, you know, the law is that the jury's verdict is entitled to deference. But at the same time, this court doesn't just abdicate its responsibility to look at the beyond a reasonable doubt standard. And when we look at the evidence, not just bits and pieces, as Goldsberry makes clear, we don't just look at like, well, okay, he could have said I wasn't a shooter because I'm a black man in Oklahoma City. And I, you know, that that's reason enough for me to have said that. We look at all of the different things. So we have the demeanor. That's one thing. We have the 911 call. We have the evidence that Mr. Dyess walked into an unlocked building rather than broke in. And again, if somebody is going to burglarize a building, they're more likely to have a gun than if they just happen to walk in. We also have the location of the casing. You're gonna rob me and come into my home to rob me. And do we have any authority for the proposition that if the door happens to be unlocked, I'm gonna get rid of the gun that I happen to have with me? Well, there's no evidence that he took anything. And so again, we don't know whether he went in there just to take shelter. It was a cold day. If you look at Mr. Dyess on the video, and there's evidence, of course, in the PSR, which was not given to the jury, that Mr. Dyess was homeless. But we know he's got all these belongings on him, which doesn't look like somebody burglarizing a home. It looks like somebody potentially just ducking in to get warm. Is all of this in the context of harmlessness? Yes. It's in both. I mean, I think both the sufficiency standard and the harmlessness standard require the court to look at the strength of the evidence. And so on sufficiency, with my first point, how I would look at that video and my observation that an angry man with a firearm probably isn't going to wait for 20 seconds or whatever it was before he displays it and starts shooting. Those sorts of things on sufficiency go to the government, right? You know, again, I think we have to look at what the inferences that flow from the evidence and nobody is saying that... I think what Judge Phillips is saying is when we are reviewing sufficiency of the evidence after the jury has convicted, we have to take all inferences in favor of the government. If they flow from the evidence, and again, there's a reasonable inference. Yes, it has to be a reasonable inference. And again, there's nothing that says that Mr. Austin had to have the gun on him when he walked into his home. And in fact, that wouldn't make much sense. He had just gone to work. He left his car running. He ran in the house. So it's not likely he would have had a gun with him. On the other hand, people do keep guns in their cars and the video cuts off before any gun is pulled. The other things... They should just argue that the inference supports the verdict. I think, you know, again, individually, you could go either way with each piece of evidence. You could say, well, you know, with respect to the demeanor, Mr. Austin was angry because he found someone in his home. And for those sorts of things on a I think when you look at all the evidence together, it's the whole of it. It's like not taking each little individual piece and saying, well, let's take this inference in favor of the government. It's saying, look at everything all together. And are we giving every inference to the government? And then on top of it, not looking at the beyond a reasonable doubt standard. That's what Goldsberry teaches. But, you know, either with the 404B harmless error analysis and with the sufficiency analysis, you have to look at the strength of the evidence. It's just that the sufficiency standard is a greater burden, and I do understand that. However, because they're related, I think we have to discuss the evidence in both contexts. But that is not even... That's only some of the... That's only some of the issues that are problematic in this case. The other is the location... I can see how you would lose on sufficiency and win on harmlessness. So why aren't you just arguing harmlessness? Because I think that it's the same evidence we're looking at. I mean, I certainly think... But the standard is different. The standard is different, but it's the same evidence. But the standard is better for you under harmlessness. Absolutely. And sufficiency, so... Absolutely. So, I mean, I think it's a it's a no-brainer that this was not a harmless error. But I think we have to look at the evidence, and that's why I'm going through it. I think under either standard, he should win. There are different remedies. Obviously, for the 404B, I don't have as high a burden, and I think it's pretty clear that the error wasn't harmless. If that's what the court is going to rule on, then he gets a new trial. If the court doesn't agree with me on the sufficiency, then the conviction is not vacated. He only gets a new trial. But those are... But it's the same evidence that the court is reviewing. And so I'm merely pointing to the issues that made this really a 50-50 case, or you know, for harmless error, maybe it only needs to be a 60-40 or 75-25 case. But in any event, the evidence wasn't strong. And adding in that Mr. Dias had been convicted of exactly the same thing... Well, the evidence was that the victim testified, he pulled a gun and shot at me. That wasn't the only evidence, though. We had the video. We had the location of the casing. We had the timing of when the weapon was pulled. So there were a lot of different things that were given to the jury. And then there were a lot of things that weren't given to the jury, such as interviewing the neighbors or doing any forensic testing. None of that was given to the jury. And all of those things together made this not a particularly strong case. And adding in that prior conviction really tipped the scales unfairly in favor of the government. And on that point, we do look and see how much was it emphasized. And the answer here is it was one answer to one question and never mentioned again, right? Well, that was the same as the Comanche case. And the court reversed in the Comanche case, and it's similar. 404B evidence is particularly strong because when you've got the jury going, hmm, there's some weird things about this case, but, you know, that guy, he's been convicted of the very same thing. That's enough to tip the scales. And that's what makes this not harmless error. The Comanche was using a knife, and on this occasion, he used a knife. So he must have used a knife on this occasion. That's a lot different. And we had felon in possession again. And in fact, the jury wasn't told the circumstances of that felon in possession conviction, which actually involved, you know, his girlfriend's kid taking a gun and shooting it, not him. But the jury wasn't told that. They were just told he was convicted of having a gun when he shouldn't have. And that's the same thing that he's being charged with here. If the court doesn't have any further questions, I'd reserve my time. I don't know if the court wants to discuss the sentencing issue. It's kind of in your court. If you want to speak about it, speak. In other words, you can reserve your time. Your Honor, I think I will just reserve my time and stand on the briefing on the sentencing issue. All right. No further questions. Thank you. Sounds good. Good morning, Your Honor. May it please the court. Tanner Larkin for the United States. Since my friend on the other side mostly focused on the evidentiary issue and harmlessness, I'll focus there. Well, can we first clarify, do you concede it was error to let in the prior conviction here? So, Your Honor, we don't think the court needs to reach that question. I'm not asking if I don't tell me what to do on my job. I'm asking you, do you concede? If the court is inclined to reach that question, we would concede that it was error in this case, because this is a very unusual case, Your Honor, which involves actual possession, but also the defendant actually firing the gun, but the defendant did not put knowledge at issue. And we're talking harmlessness. We can just move on to that. Yes. Yes, Your Honor. So, this error was harmless for two reasons. First, just like in Kupfer, this evidence played only a very minor role at trial. As in Kupfer, this came up in a single exchange with a single witness. And yet there is that saying, dynamite comes in small packages. That's true, Your Honor, but I think if you look at this case, this evidence was not dynamite. It was a blip on the radar for the jury. Then why ask? Well, the government did not know what the defense case was going to be, and so it didn't know if knowledge was going to be at issue. And that's why it brought this in. But it brought it in only in a single exchange with a single witness. It did not attempt to capitalize on this in closing argument, and the district court gave a limiting instruction, which said that this could be considered for knowledge and no other purpose. And since the only issue in this case was possession, that meant that the jury did not consider it for the only thing that was really at issue. And in this case, proof of possession was proof of knowledge, which makes this such an unusual case. I ask for the strength of the evidence. This is not a 50-50 case, Your Honor. It's not even a 75-25 case. This is not a case that he said literally because Austin testified under cross-examination and the jury found him to be credible. Meanwhile, Diaz not only did not testify, but put forward zero evidence, as the government pointed out in his rebuttal statement to the jury. In addition, if you look at Austin's actions, they confirm his account. If you had just committed a crime, the last thing you're going to do is immediately call 911 and try to get the police there as quickly as possible, and then immediately show them the video you filmed of what happened right before the crime. Unless, unless, unless, unless the neighbor really did see him fire the gun, and there's some evidence that's offered that the neighbor was implicating the homeowner. Well, Your Honor, I'd point out in that video, we don't know what the neighbor actually said. So we know the neighbor said something and Austin said, it wasn't me. But I think that's a perfectly reasonable reaction. When you're the only person at the scene of a crime, the other person has fled, and for all you know, that person is never going to be found. It's perfectly reasonable to seek to dispel any doubt. So that's Austin's demeanor. He takes the video, he shows it to Officer Howard within 10 seconds of his arrival. But what does Diaz do? He flees. Ordinarily, flight is evidence of consciousness of guilt.  Yes, but I think if you actually look at the manner in which he fled, he didn't just try to flee. He risked his life to evade capture. When a police officer pulled a firearm on him, he flipped the middle finger and kept running. And when a police dog tackled him, he attempted to gouge out the eyes of the dog. I would suggest that this is not the action of someone who thinks that he is facing his fifth state burglary rap. It's the action of someone who realizes that he is in more serious trouble than that. I mean, that's a lot of speculation. Well, Your Honor, I think it is important to realize that the defense put forward a theory in this case. It put forward zero evidence to call into question the eyewitness testimony of Austin, which the jury heard him testify and found to be credible and was substantiated by the other evidence, including, of course, Diaz's flight. But, you know, Officer Howard's testimony that that Austin was consistent in everything that he told him. And I think if you look at the strength of the evidence here and you look at the way in which this conviction barely came up and the fact that the district court told the jury, you may not consider this for anything other than knowledge in a case where proof of possession was all but conclusive proof of knowledge, it's hard to see how this could substantially influence the verdict in this case. How far away was he when he was captured? About half a mile, Your Honor. No firearm was ever found. That's right. So he made it at least half an hour before he was caught, made it about half an hour. He went through various people's backyards. He went through this drainage ditch which had some vegetation and we know that he ditched the power box that was found. We know that he ditched the backpack which was found, which contained illicit materials, wallets, women's clothing, items that suggested that he had recently been engaged in burglary. Those are large objects. Were they in the same place? I don't know if those two items were in the same place, Your Honor. But we had testimony from the police officer that this is precisely the kind of area we could hide a gun and have it not be found. So it really is not at all surprising that it was not found in this case. Unless the court has any further questions. Well, talk a little bit about harmlessness. It's your burden. What do you have to show? So what we have to show in a non-constitutional error case such as this is that the evidence that was admitted did not substantially influence that kind of trial or leave a grave doubt about that. And again, what this court has looked to is how was this evidence used in the context of the entire record, context of the entire case? And we have something that came up very briefly for the jury. The government did not attempt to capitalize on it in its closing argument. And even the defense counsel correctly told the jury that we're not here about what happened in 2019. The district court told the jury don't consider this evidence for anything other than knowledge and it's specifically warned against propensity reasoning. Meanwhile, we have a strong case here. We have the testimony of by witness. We have other evidence that corroborates his account and there was zero evidence on the other side of the ledger. What's other evidence that corroborates Mr. Austin's account? Well, I think the fact that he called 9-1-1 within about 30 or 40 seconds. If you listen to that video, he is literally breathless. He is, his first instinct is to try to get the police on the scene, which I would suggest is consciousness of innocence. What was the question that elicited the response if you have it in front of you? So, Your Honor, the prosecutor asked the case agent, detective, have you looked at the defendant's criminal history? Yes. Are you aware of a 2019 conviction in Oklahoma State Court for being a felon in possession? Yes. So he was convicted of that. Yes. And then the defense counsel and its cross-examination asked the witness, so this was a plea not a jury trial, correct? Witness said correct. So this is very different from, you know, the Comanche case where you had questions put to two separate witnesses where they went into a fair amount of detail about the violent acts. You know, as this court said to McLaughlin in the 403 context, if you put in a prior conviction with all the details, the court is going to be a lot more concerned that is going to influence the jury. But if you only put in the fact of the conviction, that is much less likely to have a substantial influence on the jury. I agree with you on Comanche. I think that's different. But if we affirm here, is that the new normal? Go ahead and ask your one question about has the person been convicted of a felon in possession and never mentioned again and hope that the reverberating bell continues through jury deliberations. That's not the new normal, Your Honor. I think in this case, this 440 evidence had very little probative value for the government. The government had a very strong case. It didn't need this. I've seen a lot stronger cases than this one. You can say it's a really strong case, but nobody other than the homeowner says he had a gun in his hand for one thing. Well, I think one way of looking at it, Your Honor, is when the government went up to give its closing argument, it didn't mention this. It mentioned all of the other evidence in this case because that's what it felt was what was important for the jury to be thinking about. So I think, you know, had we known that the defendant was not going to put possession at, or excuse me, intent, knowledge at issue, this is not something that would have come in in the first place. So the government would not, you know, risk an issue to be, you know, discussed on appeal because it really was not necessary. So what comes down to is this, you're saying, please don't have a grave doubt. Your Honor, this is not a grave doubt case. I think this is very similar to Kupfer, where you have something that comes in very briefly, like in Kupfer, where it's asked, where it is not in the closing argument, just like in Kupfer, and where there's a limiting instruction, which this Court has emphasized in Becker and many cases is relevant for the 404B harmless error analysis. And again, this is a very unusual case. In the minority of cases, we're talking about constructive possession cases where knowledge of the gun, and specifically of the gun's presence, is going to be the key issue. This is an actual possession case, but not just an actual possession case. An actual possession case, or the government's theory, is that the defendant fired the gun. It's hard to see how he could have not known that the item in his hand was a gun, and that's why this is. Once you get that far, you got it won, I agree. If he's fired a gun, you win. But, that's not where we are. Got to concede you a lot to have that. Well, I think it's important that the jury was not presented with any contrary evidence, any evidence to undermine the credibility of Austin. If you look at the, you know, defense attempts to find inconsistencies that simply aren't there in his testimony. He, for example, never actually says on the video that the shooting occurred in the Grassy area, rather than the parking lot. He never says that the door was broken when he first arrived, as opposed to during the struggle. I think it's important to remember that many of the arguments you're hearing from defense counsel, the exact arguments that were put to the jury, and the jury did not find them to be very persuasive. Simply because, even though this is maybe not the strongest case that this court has ever seen, it is a case where there is ample evidence on one side of the ledger and absolutely nothing on the other. Further questions? All right. Thank you, counsel. I ask the court to affirm. Thank you. I would agree with counsel that this was a very unusual case. We do have one eyewitness, but the eyewitness was the alternate suspect. And we have to look at his testimony in that light. And when we look at this testimony in that light, there are so many things that undermine his testimony, that it makes the case one in which it could have gone either way. The only way we get to Mr. Dias being the assailant here, is to engage in speculation. And certainly under a sufficiency standard, the jury is entitled to do some amount of speculation, but under a harmless error standard, we're looking at the strength of the evidence. And it just wasn't there in this case. So I'd ask that the court reverse Mr. Dias' conviction. I think the court could go so far as to vacate the conviction, because sufficiency just isn't there. But if the court stops short of that, then I'd ask that the court reverse his conviction and order a new trial. Thank you, Your Honor. Thank you, counsel, for your arguments today. The case submitted and counsel are excused.